UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-244-GWU

BILL HENRY BLEVINS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

08-244  Bill Henry Blevins

>       impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.
>
> 4.    At the fourth step, the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

08-244  Bill Henry Blevins

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

08-244  Bill Henry Blevins

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

08-244  Bill Henry Blevins

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Pt. 404, Subpt. P, App. 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

08-244  Bill Henry Blevins

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Bill Henry Blevins, a 41-year-old man with a high school equivalency education and work experience as a loading dock worker, ticket taker, stock clerk, waiter, and cashier, alleged disability beginning June 13, 2005 due to bleeding hemorrhoids, hepatitis C, a hiatal hernia, and an HIV infection. (Tr. 79-80). An Administrative Law Judge (ALJ) determined that Mr. Blevins had "severe" impairments consisting of being HIV-positive (since 1987), residuals from surgical removal of condylomas, a hepatitis C infection, and depression. (Tr. 22). Based on the functional capacity assessment supplied by the plaintiff's treating physician, Dr. Ardis Hoven, on October 12, 2006, in which the physician estimated that the plaintiff could work only three to four hours a day, that his symptoms would often interfere with attention and concentration, and that he would miss more than six days per month (Tr. 266-7), the ALJ determined that Mr. Blevins could not perform sustained, competitive work activity as of the date of the physician's opinion, and awarded disability.  (Tr. 24-6).  Prior to October 12, 2006, however, the ALJ determined that Mr. Blevins was capable of "light" level exertion and was capable of performing his past work as a ticket taker, waiter, and sales clerk.  (Tr. 24-5).

08-244  Bill Henry Blevins

The plaintiff appeals the unfavorable portion of the administrative decision. Therefore, the period at issue in the present appeal is the period between the alleged onset date of June 13, 2005 and October 11, 2006.

One of the plaintiff's arguments on appeal was that he met the Commissioner's Listing of Impairment (LOI) 14.08 for HIV infections.  LOI 14.08 provides that an individual be found disabled at the third step of the sequential evaluation process with acceptable documentation of HIV infection (not at issue here) plus one of a number of additional conditions.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.08 (2008).  Subsection F describes one of the additional conditions as being "[c]onditions of the skin or mucous membranes . . . with extensive fungating or ulcerating lesions not responding to treatment (e.g., dermatological conditions such as eczema or psoriasis, vulvovaginal or other mucosal candida, condyloma caused by human papillomavirus, [or] genital ulcerative disease) . . . ."

As previously noted, the ALJ determined that the plaintiff's residuals from the surgical removal of condylomas[1] was a severe impairment.  The medical evidence

---

[1] Anal condyloma, or anal warts, are a sexually transmitted disease that appears externally in the anal area and is caused by the human papillomavirus.  The lesions are typically raised and pinkish.  This condition may produce no symptoms at all, or cause itching, burning, tenderness, or pain during intercourse. HealthCentral Network.  (Visited March 24, 2009) <http://www.healthcentral.com/encyclopedia/408/405.html>, cited in Commissioner's Motion for Summary Judgment, Docket Entry No. 15, p. 3 n. 2.

08-244  Bill Henry Blevins

shows that, in fact, Mr. Blevins had undergone a procedure for fulguration and excision of anal condylomata as long ago as January, 1999 at the University of Cincinnati Hospital. (Tr. 134). During the period relevant to his application for DIB and SSI, medical evidence was submitted showing that Dr. Patrick F. Hagihara of the University of Kentucky Medical Center had performed laser surgery for the removal of anal condylomas on September 2, 2005. (Tr. 166). Dr. Hagihara noted on follow-up that the condylomas were located in the anal and perianal areas with "carcinoma in situ and dysplasia in some biopsies that were obtained." (Tr. 250). Mr. Blevins was still in the healing stage on November 16, 2005 (Tr. 249), but as of the next visit on May 31, 2006 the anal area was completely healed (Tr. 243). However, Dr. Hagihara went on to state that inspection showed rough verrucous-looking perianal skin. (Id.).[2]  A digital anal exam also showed verrucous-feeling changes in the anal canal and transversely oriented hard tissue anteriorly to the left. (Id.). Dr. Hagihara performed an anoscopy which also showed verrucous-looking areas. (Id.).[3]  Although the language used by Dr. Hagihara is not entirely clear, it

---

[2] Verruca is another word for the common wart. Dorland's Illustrated Medical Dictionary, 27th Ed., p. 1830.

[3] An anoscope is a speculum for examining the anus and lower rectum. Dorland's, supra, p. 94. A speculum is "an instrument that exposes the interior of a passage or cavity of the body by enlarging the opening." Dorland's, supra, p. 1554.

08-244  Bill Henry Blevins

appears that he was considering surgery including "[e]xcision of the abnormal area with advance flap relining of the anal canal." (Id.).

The Commissioner correctly notes that there are indications that a follow-up colonoscopy was normal (Tr. 282, 288), but since a colonoscope is designed to examine the colon[4] this does not necessarily establish the absence of <u>anal</u> and <u>perianal</u> warts.  At a minimum, even if this were not the case, there would appear to be an unresolved conflict between the findings of Dr. Hagihara's anoscopy and perianal inspection, and the suggestion that the area was clear on the colonscopy. Moreover, the plaintiff testified at the February 14, 2007 hearing that Dr. Hagihara had just performed another procedure to "laser off" warts and was concerned about cancerous spots in his colon. (Tr. 385-6).  Certainly, it is not clear to a lay reviewer that the requirements of LOI 14.08F would not have been met for 12 continuous months.  No medical adviser was called to testify, and no state agency physician reviewed all of the evidence in order to determine whether the plaintiff met or equaled a Listing.  Therefore, a remand will be required for further consideration of the applicability of the Listing.

In remanding the case for consideration of LOI 14.08F, the court does not intend to rule out the possibility that Mr. Blevins's condition equaled Subsections D,

---

[4] <u>See</u> <u>Dorland's</u>, <u>supra</u>, p. 360.

08-244  Bill Henry Blevins

E, or N, as alleged by the plaintiff in his brief, but the evidence as it currently stands is not as clear as for Subsection F.

The plaintiff's other main contention on appeal is that the ALJ's selection of October 12, 2006 as the onset date was not supported by substantial evidence. It is unnecessary to decide this point given the necessity for a remand for consideration of the applicability of the Listings.

The decision will be remanded for further consideration.

This the 10th day of June, 2009.

**Signed By:**

*G. Wix Unthank*

**United States Senior Judge**